**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re: | Chapter 11 |
| KidsPeace National Centers of Georgia, Inc., | Case No. 13-14512 (REF) |
| Debtor. | |

**CHAPTER 11 PLAN OF REORGANIZATION OF
KIDSPEACE NATIONAL CENTERS OF GEORGIA, INC.**

Dated:  December 15, 2014

NORRIS McLAUGHLIN & MARCUS, P.A.
Morris S. Bauer, Esq.
Joseph R. Zapata, Esq.
The Paragon Centre
Suite 300, 1611 Pond Road
Allentown, PA 18104
(610) 391-1800

Attorneys for the Debtor and
Debtor in Possession

# TABLE OF CONTENTS

**Page**

ARTICLE 1    DEFINITIONS ................................................................................................ 1

ARTICLE 2    INTERPRETATION AND APPLICATION ...................................................... 10

2.1    Interpretation. .......................................................................................... 10

2.2    Application of Definitions and Rules of Construction Contained in the
Bankruptcy Code. .................................................................................. 10

2.3    Other Terms. ........................................................................................... 10

2.4    Incorporation of Plan Documents. .......................................................... 10

ARTICLE 3    CLASSIFICATION, TREATMENT, AND VOTING RIGHTS OF
CLAIMS ................................................................................................ 10

3.1    Impaired and Unimpaired Classes of Claims........................................... 10

3.2    Impairment Controversies....................................................................... 10

3.3    Claim Charts. .......................................................................................... 10

ARTICLE 4    PROVISIONS FOR TREATMENT OF CLAIMS UNDER THE PLAN........... 11

4.1    *Class One - Priority Non-Tax Claims (Unimpaired)*........................................ 11

4.2    *Class Two - Escrow Agent/Certificate Holders Secured Claim and
Unsecured Claim (Impaired).* ................................................................. 11

4.3    *Class Three — PBGC Secured Claim and Unsecured Claim (Impaired).* .......... 12

4.4    *Class Four - Other Secured Claims (Bowdon Hospital Authority)
(Unimpaired)*........................................................................................... 13

4.5    *Class Five —General Unsecured Claims (Impaired).* ....................................... 13

4.6    Equity Interest of the Debtor................................................................... 14

ARTICLE 5    PROVISIONS FOR TREATMENT OF UNCLASSIFIED CLAIMS
UNDER THE PLAN................................................................................ 14

5.1    Unclassified Claims. ............................................................................... 14

5.2    Treatment of Administrative Expense Claims........................................... 14

5.3    Payment of Interim Amounts................................................................... 16

5.4    Post-Effective Date Fees and Expenses.................................................. 16

ARTICLE 6    ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF
REJECTION BY ONE OR MORE CLASSES OF CLAIMS ............................ 17

6.1    Classes Entitled to Vote. ......................................................................... 17

6.2    Class Acceptance Requirement................................................................ 17

6.3    Cramdown................................................................................................ 17

# TABLE OF CONTENTS

(continued)

**Page**

ARTICLE 7    MEANS FOR IMPLEMENTATION OF THE PLAN ....................................... 17

7.1    Compromise of Controversies. ............................................................. 17

7.2    Vesting of Assets. ................................................................................ 17

7.3    Continued Corporate Existence. .......................................................... 18

7.4    Officers, Directors and Post Confirmation Management. ................... 18

7.5    Corporate Action. ................................................................................ 18

7.6    Resolution, Settlement and Treatment of the Claims of the Escrow Agent and Certificate Holders. .......................................................... 19

7.7    Resolution, Settlement and Treatment of the Claims of the PBGC. .................... 19

7.8    Treatment of General Unsecured Claims. ............................................ 19

7.9    Effective Date and Initial Distribution Date Payments. ...................... 20

7.10    Operations Between the Confirmation Date and the Effective Date. ................. 20

ARTICLE 8    THE DISBURSING AGENT .......................................................... 20

8.1    Disbursing Agent. ............................................................................... 20

8.2    Powers and Duties. .............................................................................. 20

ARTICLE 9    DISTRIBUTION PROVISIONS .................................................... 21

9.1    Sources of Cash for Plan Distributions. .............................................. 21

9.2    Plan Distributions. .............................................................................. 21

9.3    Timing of Plan Distributions. ............................................................. 21

9.4    Address for Delivery of Plan Distributions/Unclaimed Distributions. ............... 21

9.5    Time Bar to Cash Payments. ............................................................... 21

9.6    Manner of Payment under the Plan. .................................................... 22

9.7    Fractional Plan Distributions. ............................................................. 22

9.8    Surrender and Cancellation of Instruments. ........................................ 22

9.9    Record Date for Distributions. ............................................................ 22

9.10    Subsequent Distributions. ................................................................... 23

9.11    *De Minimis* Distributions. .................................................................. 23

ARTICLE 10    PROCEDURES FOR RESOLVING AND TREATING CONTESTED CLAIMS, OBJECTION TO CERTAIN CLAIMS AND AMENDMENT TO SCHEDULES ........................................................................... 23

10.1    Prosecution of Contested Claims. ....................................................... 23

10.2    Objection Deadline. ............................................................................ 23

## TABLE OF CONTENTS
### (continued)

Page

| | | |
|---|---|---|
| 10.3 | Amendment of Schedules. | 23 |
| 10.4 | Claims Settlement. | 24 |
| 10.5 | No Distribution Pending Allowance. | 24 |
| 10.6 | Entitlement to Plan Distributions Upon Allowance | 24 |
| ARTICLE 11 | TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 24 |
| 11.1 | Assumption and Rejection of Executory Contracts and Unexpired Leases. | 24 |
| 11.2 | Cure. | 25 |
| 11.3 | Claims Arising from Rejected Contracts. | 25 |
| ARTICLE 12 | CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND THE OCCURRENCE OF THE EFFECTIVE DATE | 26 |
| 12.1 | Conditions Precedent to Confirmation. | 26 |
| 12.2 | Conditions Precedent to the Occurrence of the Effective Date. | 26 |
| ARTICLE 13 | RETENTION OF JURISDICTION | 27 |
| ARTICLE 14 | MISCELLANEOUS PROVISIONS | 28 |
| 14.1 | Subordination. | 28 |
| 14.2 | Payment of Statutory Fees. | 28 |
| 14.3 | Satisfaction of Claims. | 28 |
| 14.4 | Releases. | 29 |
| 14.6 | Injunction. | 30 |
| 14.7 | Discharge of Liabilities. | 31 |
| 14.8 | Discharge of the Debtor. | 31 |
| 14.9 | Notices. | 31 |
| 14.10 | Headings. | 32 |
| 14.11 | Governing Law. | 32 |
| 14.12 | Notice of Entry of Confirmation Order and Relevant Dates. | 32 |
| 14.13 | Interest. | 32 |
| 14.14 | Modification of the Plan. | 32 |
| 14.15 | Revocation of Plan. | 32 |
| 14.16 | Setoff Rights. | 33 |
| 14.17 | Compliance with Tax Requirements. | 33 |
| 14.18 | Rates. | 33 |

## TABLE OF CONTENTS

(continued)

**Page**

14.19   Binding Effect. ................................................................................................ 33

14.20   Severability. ................................................................................................... 33

14.21   Successors and Assigns. ................................................................................ 34

14.22   Corrective Action. ........................................................................................ 34

## DEBTOR'S PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

KidsPeace National Centers of Georgia, Inc. ("KPGA"), as debtor and debtor in possession in the above captioned case, respectfully proposes the following plan of reorganization under chapter 11 of the Bankruptcy Code (the "Plan").

**THE ESCROW AGENT, THE PENSION BENEFIT GUARANTY CORPORATION, AND THE COMMITTEE REPRESENTATIVE FULLY SUPPORT THIS PLAN AND URGE ALL ELIGIBLE CREDITORS TO VOTE IN FAVOR OF IT.**

Prior to voting to accept or reject the Plan, eligible creditors are encouraged to read the Plan, the accompanying Disclosure Statement, and their respective exhibits and schedules in their entirety.  No materials other than the Plan, the Disclosure Statement, and their respective exhibits and schedules have been authorized by the Debtor for use in soliciting acceptances or rejections of the Plan.

**PLEASE NOTE THAT SECTIONS 14.4, 14.5 AND 14.6 OF THE PLAN SET FORTH DETAILED RELEASE, EXCULPATION AND INJUNCTION PROVISIONS RELATING TO VARIOUS PERSONS, INCLUDING THE DEBTOR, ESCROW AGENT, THE PBGC, THE COMMITTEE, THE COMMITTEE REPRESENTATIVE AND OTHERS.**

## ARTICLE 1
## DEFINITIONS

In the Plan, the following definitions apply:

"*Administrative Bar Date*" means the date that is 45 days after the Confirmation Date.

"*Administrative Expense Claim*" means any right to payment, whether secured or unsecured, constituting a cost or expense of administration of the Chapter 11 Case (incurred after the Petition Date and prior to the Effective Date, or in the case of a Section 503(b)(9) Claim, incurred prior to the Petition Date) described in Sections 330, 331, or 503(b) and entitled to priority under Sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Debtor's Estate, any actual and necessary costs and expenses of operating the Debtor's business, any indebtedness or obligations incurred or assumed by the Debtor, as Debtor in possession during the Chapter 11 Case, including without limitation any allowances of compensation and reimbursement of expenses to the extent allowed by Final Order under Section 330 or 503 of the Bankruptcy Code. For the avoidance of doubt, Allowed (i) fees and expenses of each Professional, and (ii) Section 503(b)(9) Claims shall be treated as Administrative Expenses.

"*Allowed*" means, with respect to a Claim: (i) any Claim against the Debtor which is listed by the Debtor in the Schedules as liquidated in amount and not disputed and/or contingent and for which no contrary proof of claim has been filed; (ii) any Claim, proof of

which was filed on or before the Bar Date, that is not a Contested Claim and as to which no objection to the allowance thereof has been interposed on or before the Initial Distribution Date; (iii) any Claim, proof of which was filed on or before the Bar Date, which is neither a Contested Claim nor a Disallowed Claim; or (iv) any Claim, proof of which was filed on or before the Bar Date, expressly allowed by a Final Order or by agreement in accordance with the provisions of the Plan.

"*Assets*" means all of the Debtor's right, title and interest of any nature in property of any kind, wherever located, as specified in Section 541 of the Bankruptcy Code.

"*Authorized Debtor's Representative*" means the CEO of the Reorganized Debtor.

"*Avoidance Actions*" means any and all actual or potential Causes of Action to avoid and/or recover a transfer of property or an obligation incurred by the Debtor pursuant to any applicable Section of the Bankruptcy Code, including Sections 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code.

"*Ballot*" means those certain ballots sent to holders of Claims for purposes of voting on the Plan.

"*Balloting, Claims, and Notice Agent*" means Rust Omni, the Balloting, Claims, and Notice Agent of the KPC Debtors.

"*Bankruptcy Code*" means the Bankruptcy Reform Act of 1978, as codified at Title 11 of the United States Code, as amended from time to time and applicable to the Chapter 11 Case.

"*Bankruptcy Court*" means the United States Bankruptcy Court for the Eastern District of Pennsylvania, or such other court having jurisdiction over the Chapter 11 Case.

"*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as prescribed by the United States Supreme Court pursuant to Section 2075 of Title 28 of the United States Code and as applicable to the Chapter 11 Case.

"*Bar Date*" or "*Section 503(b)(9) Bar Date*" means August 30, 2013 at 5:00 Eastern Time, or such other supplemental deadline for the filing of proofs of claim as may be established pursuant to an order of the Bankruptcy Court.

"*Bar Date Order*" means the order of the Bankruptcy Court establishing the Bar Date and the Section 503(b)(9) Bar Date.

"*Bowdon Campus*" means the real property located at 101 KidsPeace Drive, Bowdon, Carroll County, Georgia 30108 commonly referred to as the "Bowdon Campus".

"*Business Day*" means any day other than a Saturday, a Sunday or any other day on which commercial banks are required or authorized to close for business.

"*Cash*" means legal tender of the United States of America or readily marketable direct obligations of, or obligations guaranteed by, the United States of America.

"*Causes of Action*" means all claims, rights, actions, causes of action, liabilities. obligations, suits, debts, remedies, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages or judgments, whether known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, foreseen or unforeseen, asserted or unasserted, arising in law, equity or otherwise, including without limitation any claims, causes of action, rights or remedies created by or arising under the Bankruptcy Code, including without limitation transfers avoidable and/or recoverable under chapter 5 of the Bankruptcy Code, or under other applicable law, on behalf of the Debtor and its Estate.

"**Certificates**" means the certificates of participation issued on December 19, 2003 in two separate series, Series A and Series B, totaling $3,600,000.

"*Certificate Holders*" means the holders of the Certificates on the Effective Date.

"*Chapter 11 Case*" means the case commenced under Chapter 11 of the Bankruptcy Code and pending before the Bankruptcy Court with respect to the Debtors, styled as *In re KidsPeace National Centers of Georgia, Inc.*, Case No. 13-14512-REF.

"*Claim*" means (a) any right to payment, whether or not such right is known or unknown, reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is known or unknown, reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

"*Committee*" means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee in the KPC Chapter 11 Cases.

"*Committee Representative*" means the representative appointed by the Committee in accordance with the KPC Confirmation Order.

"*Confirmation Date*" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

"*Confirmation Hearing*" means the hearing held by the Bankruptcy Court, as it may be continued from time to time, to consider confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code.

"*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan.

"*Constituent Documents*" means the Articles of Incorporation and By-Laws of the Debtor and any other ancillary documents relating thereto.

"*Contested Claim*" means any Claim as to which either the Debtor, Reorganized Debtor or any other party in interest have filed an objection, provided that the holder thereof has been so notified in writing no later than ninety (90) days after the Effective Date unless such date has been extended in accordance with Section 10.2 hereof.

"*Cure Cost*" means any amount payable by the Debtor pursuant to Section 11.2 and Section 365(b)(l) of the Bankruptcy Code.

"*Debtor*" means KidsPeace National Centers of Georgia, Inc.

"*Debtor's Real Property*" means all interests in the real property and the personal property and fixtures associated therewith at the Bowdon Campus.

"*Debtor-in-Possession*" means the Debtor, in its capacity as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

"*Disallowed*" when used with respect to any Claim, means:

(a)     Any Claim that has been disallowed or expunged by a Final Order;

(b)     Any Claim against the Debtor that has been listed by the Debtor in the Schedules in the amount of $0 or as unliquidated in amount, disputed, or contingent and for which a Bar Date has been established but no proof of claim has been timely filed or, pursuant to a Final Order of the Bankruptcy Court, deemed timely filed; or

(c)     Any Claim that is not listed on the Schedules for the subject Debtor and for which a Bar Date has been established but no proof of claim has been timely filed or, pursuant to a Final Order of the Bankruptcy Court, deemed timely filed.

"*Disbursing Agent*" means the Reorganized Debtor.

"*Disclosure Statement*" means the Disclosure Statement filed with respect to the Plan, as it may be amended or modified from time to time.

"*Distribution Date*" means, with respect to any Allowed Claim either: (a) the Initial Distribution Date; and/or (b) the date on which a Subsequent Distribution is made, as defined in and subject to the provisions set forth in Article 9 herein.

"*Distribution Record Date*" shall mean the Confirmation Date or such other date as may be designated in the Confirmation Order.

"*Effective Date*" means a date selected by the Debtor, which must be a Business Day, that is no later than thirty (30) Business Days after all of the conditions specified in Section 12.2 have been satisfied or waived (to the extent subject to waiver).

"*Encumbrance*" means, with respect to any property, whether tangible or intangible, any mortgage, lien, pledge, charge, security interest, assignment, or encumbrance of any nature in respect of such property (including, without express or implied limitation, any conditional sale or other title retention agreement to give, any financing statement under the Uniform Commercial Code or comparable law of any jurisdiction).

"*Entity*" means any Person or organization created by law, including, without limitation, any individual, company, corporation, limited liability company, partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, or government or any political subdivision thereof.

"*Escrow Agent*" means Manufacturers and Traders Trust Co. as escrow agent for the 2003 Series A and Series B Certificates.

"*Escrow Agent/Certificate Holders Claims*" includes the Certificate Secured Claims and the Certificate Unsecured Claims and means the entire Claim of the Escrow Agent and the Certificate Holders, which the Escrow Agent and the Debtor have agreed to settle as set forth in the Plan.

"*Estate*" means the estate of the Debtor created by Section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

"*Fee Application*" means an application for allowance and payment of a Fee Claim.

"*Fee Claim*" means all Administrative Claims for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals (to the extent allowed under Sections 328, 330, 331, 363, or 503 of the Bankruptcy Code) through the Effective Date.

"*Final Order*" means (a) an order or judgment of the Bankruptcy Court or any other court or adjudicative body as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing is then pending, or (b) in the event that an appeal, writ of certiorari, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court or any other court or adjudicative body shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Section 502 of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 may be filed with respect to such order.

"*General Unsecured Claim*" means any unsecured Claim against the Debtor that is not an Administrative Expense Claim, a Section 503(b)(9) Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a PBGC Unsecured Claim or an Escrow Agent/Certificate Holder Claim.

"**Holder**" means (i) with respect to the holders of Claims under the Certificates, the beneficial owners thereof, and (ii) in all other cases, the beneficial holder of any Claim.

"**Impaired**" means, with respect to a Claim, such Claim that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

"**Initial Distribution**" means all payments contemplated by the Plan to be distributed on or about the Effective Date or as soon thereafter as practical.

"**Initial Distribution Date**" shall mean a Business Day that is no more than sixty (60) days after the Effective Date.

"**Internal Revenue Code**" means the Internal Revenue Code of 1986, as amended, and any applicable rulings, regulations (including temporary and proposed regulations) promulgated thereunder, judicial decisions, and notices, announcements, and other releases of the United States Treasury Department or the IRS.

"**IRS**" means the United States Internal Revenue Service.

"**KPC Chapter 11 Cases**" means the cases commenced under chapter 11 of the Bankruptcy Code and pending before the Bankruptcy Court with respect to the Debtors, styled as *In re KidsPeace Corporation et al.*, Case No. 13-14508-REF.

"**KPC Confirmation Order**" means the confirmation order entered by the Bankruptcy Court on April 3, 2014 confirming the First Modified Joint Chapter 11 Plan of Reorganization of KidsPeace Corporation; KidsPeace Children's Hospital, Inc.; KidsPeace Mesabi Academy, Inc.; KidsPeace National Centers, Inc.; KidsPeace National Centers of New England, Inc.; KidsPeace National Centers of North America, Inc.; Iron Range School, Inc.; and KidsPeace National Centers of New York, Inc. in the KPC Chapter 11 Cases.

"**KPC Debtors**" means KidsPeace Corporation; KidsPeace Children's Hospital, Inc.; KidsPeace Mesabi Academy, Inc.; KidsPeace National Centers, Inc.; KidsPeace National Centers of New England, Inc.; KidsPeace National Centers of North America, Inc.; Iron Range School, Inc.; KidsPeace National Centers of New York, Inc. and the Debtor.

"**KPC Reorganized Debtors**" means the reorganized debtors under the First Modified Joint Chapter 11 Plan of Reorganization of KidsPeace Corporation; KidsPeace Children's Hospital, Inc.; KidsPeace Mesabi Academy, Inc.; KidsPeace National Centers, Inc.; KidsPeace National Centers of New England, Inc.; KidsPeace National Centers of North America, Inc.; Iron Range School, Inc.; and KidsPeace National Centers of New York, Inc. confirmed by the Bankruptcy Court on April 3, 2014 in the KPC Chapter 11 Cases.

"**KPC Reorganized Debtors Confirmed Plan**" means the Chapter 11 plan of reorganization confirmed by the Bankruptcy Court on April 3, 2014 in the KPC Chapter 11 Cases.

"***Lien***" means a lien as defined in Section 101(37) of the Bankruptcy Code, including but not limited to any mortgage, lien, pledge, charge, security interest, easement or encumbrance of any kind whatsoever affecting such interest in property.

"***M & T***" means M & T Bank, the Escrow Agent.

"***Notice of Effective Date***" means the notice of entry of the occurrence of the Effective Date, to be filed with the Bankruptcy Court and mailed by the Claims Agent to holders of Claims.

"***Objection Deadline***" means the deadline for filing objections to Claims as set forth in Section 10.2, as such deadline may from time to time be extended.

"***Operating Expenses***" means all operating expenses of the Debtor, determined in conformity with GAAP consistently applied.

"***Opt-In Creditor Amount***" means the amount due to all General Unsecured Creditors who elect the Alternate Creditor Treatment.

"***Other Secured Claim***" means any Secured Claim against the Debtor that is not an Escrow Agent/Certificate Holder Secured Claim.

"***PBGC***" means the Pension Benefit Guaranty Corporation.

"***PBGC Claims***" includes the PBGC Unsecured Claims and means the entire Claim of the PBGC, which the PBGC and the Debtors have agreed to settle as set forth in the Plan.

"***PBGC Liens***" means valid, perfected, and enforceable liens, not to exceed $5,715,225 in the aggregate, on the PBGC Note Collateral.

"***PBGC Note***" means a new note issued by the KPC Reorganized Debtors on a joint and several basis with a principal amount equal to $13,050,000, a fifteen-year term, an interest rate of 0%, and equal quarterly payments of $225,000 beginning on the first day of the ninth month following the Effective Date and continuing the first date of each quarter thereafter until fully paid.  The PBGC Note will be secured by the PBGC Liens.

"***PBGC Note Collateral***" means: (i) Liens in favor of the PBGC on the following property of the KPC Reorganized Debtors: (a) the "Broadway" campus located at 1620 Broadway, Bethlehem, PA 18015; (b) the KidsPeace corporate headquarters located at 4085 Independence Dr., Schnecksville, PA 18078; (c) the Wilson Sarig building, located at 8th Avenue & Hay Road, Temple, PA 19560; (d) the Maine campus, located on Route 80, Ellsworth ME 04605; (e) the Orchard Hills Campus, located in Orefield, PA; and (f) accounts receivable and proceeds of the KPC Reorganized Debtors.

"***PBGC Prepetition Claim***" means the Claim of PBGC for unfunded benefit liabilities under 29 U.S.C. § 1362(b), minimum funding contributions under 29 U.S.C. § 1362(c), and for insurance premiums due (if any) under 29 U.S.C. §§ 1306 and 1307, in the KPC Chapter

11 Cases as of the Petition Date, which shall be Allowed in the amount set forth in Section 7.8 of this Plan.

"*PBGC Unsecured Claim*" means the portion of the PBGC Prepetition Claim that is not a Secured Claim, Priority Non-Tax Claim or an Administrative Claim.

"*Pension Plan*" shall mean the KidsPeace Defined Benefit Plan.

"*Person*" means an individual, corporation, partnership, limited liability company, joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity, or political subdivision thereof, or any other entity.

"*Petition Date*" means May 21, 2013, the date on which the Chapter 11 Case of the Debtor was commenced.

"*Plan*" means this chapter 11 plan of reorganization, either in its present form or as it may be amended, supplemented, or otherwise modified from time to time, and the exhibits and schedules hereto, as the same may be in effect at the time such reference becomes operative.

"*Plan Distribution*" means payment(s) or distribution(s) under the Plan to the holder of an Allowed Claim.

"*Plan Documents*" means the documents that aid in effectuating the Plan as specifically identified as such herein and filed with the Bankruptcy Court as specified in Section 2.4.

"*Priority Non-Tax Claim*" means any Claim entitled to priority in payment as specified in Section 507(a)(3), (4), (5), (6), (7) or (9) of the Bankruptcy Code.

"*Priority Tax Claim*" means any Claim, whether secured or unsecured, entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

"*Pro Rata Share*" means the proportion that an Allowed Claim bears to the aggregate amount of all Claims in a class or classes, as applicable, including Contested Claims, but excluding Disallowed Claims, and taking into account any Contested Claims Reserves (a) as calculated by the Disbursing Agent and/or (b) as determined or estimated by the Bankruptcy Court.

"*Professional*" means a Person retained or to be compensated for services rendered or costs incurred on or after the Petition Date and on or prior to the Effective Date pursuant to Sections 327, 328, 329, 330, 331, 503(b) or 1103 of the Bankruptcy Code in this Chapter 11 Case.

"*Professional Fee Order*" means an order of the Bankruptcy Court establishing procedures for interim compensation and reimbursement of Professionals.

"*Rejection Damage Claim*" means any Claim arising out of the rejection of an executory contract or unexpired lease.

8

"***Released Parties***" means, collectively, effective as of the Effective Date, (a) any current or former officers of the Debtor, any director of the Debtor, and any employees of the Debtor serving as such as of the Petition Date, (b) the Professionals, and (c) with respect to the persons listed in the foregoing (a) and (b), such persons' present and former officers, directors, shareholders, members, employees, attorneys, consultants, advisors, parents, subsidiaries, predecessors, successors, affiliates, professionals and agents.

"***Reorganized Debtor***" means, from and after the Effective Date, the Debtor and any successors thereto by merger, consolidation or otherwise.

"***Schedules***" means the schedules of Assets and liabilities and the statements of financial affairs filed by the Debtor with the Bankruptcy Court, as required by Section 521 of the Bankruptcy Code and in conformity with the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be amended or supplemented by the Debtor from time to time in accordance with Bankruptcy Rule 1009.

"**Section *503(b)(9) Claims***" means all Claims against the Debtor under Section 503(b)(9) of the Bankruptcy Code, which provides priority status to claims for the value of goods received by the Debtor within 20 days before the Petition Date and sold to the Debtor in the ordinary course of the Debtor's business.

"***Secured Claim***" means (a) a Claim secured by a Lien on any Assets, which Lien is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, and which is duly established in the Chapter 11 Case, but only to the extent of the value of the holder's interest in the Estate's interest in the Asset(s) that secure(s) payment of the Claim, (b) a Claim against the Debtor that is subject to a valid right of recoupment or setoff under Section 553 of the Bankruptcy Code, but only to the extent of the Allowed amount subject to recoupment or setoff as provided in Section 506(a) of the Bankruptcy Code and (c) a Claim deemed or treated under the Plan as a Secured Claim.

"***Subsequent Distribution***" means Plan Distributions by the Disbursing Agent after the Initial Distribution Date on account of Claims which are either: (a) Allowed Claims as of the Initial Distribution Date; or (b) Contested Claims as of the Initial Distribution Date but which subsequently become Allowed Claims pursuant to Section 9.10 of this Plan.

"***U.S. Trustee***" means the Office of the United States Trustee for the Eastern District of Pennsylvania

"***Unimpaired***" means, with respect to any Claim, a Claim that is not Impaired.

## ARTICLE 2
## INTERPRETATION AND APPLICATION

2.1    <u>Interpretation.</u>    Unless otherwise specified, all Section, article, exhibit and schedule references in the Plan are to the respective Section in, article of, or exhibit or schedule to the Plan, as the same may be amended, waived, or modified from time to time. Words denoting the singular number shall include the plural and vice versa, as appropriate, and words denoting one gender shall include the other gender. The Disclosure Statement may be referred to for purposes of interpretation to the extent any term or provision of the Plan is determined by the Bankruptcy Court to be ambiguous.

2.2    <u>Application of Definitions and Rules of Construction Contained in the Bankruptcy Code.</u>    Words and terms defined in Section 101 of the Bankruptcy Code have the same meanings when used in the Plan, unless a different definition is set forth in Article 1 hereof. The rules of construction contained in Section 102 of the Bankruptcy Code, other than Section 102(5) of the Bankruptcy Code, apply to the construction of the Plan. For the purposes of construction of the Plan, "or" is disjunctive.

2.3    <u>Other Terms</u>.    The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.

2.4    <u>Incorporation of Plan Documents</u>.    All appendices and exhibits to the Plan and the Disclosure Statement are incorporated into the Plan by this reference and are a part of the Plan as if set forth in full herein.

## ARTICLE 3
## CLASSIFICATION, TREATMENT, AND VOTING RIGHTS OF CLAIMS

Except as otherwise provided herein, for the purposes of organization, voting and all confirmation matters, all Claims against the Debtor will be classified as set forth in this Article 3. A Claim shall be deemed classified in a particular Class only to the extent that such Claim qualifies within the description of such Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim qualifies within the description of such different Class.  A Claim is in a particular Class only to the extent that such Claim has not been paid or otherwise settled prior to the Effective Date.

3.1    <u>Impaired and Unimpaired Classes of Claims</u>.    Priority Non-Tax Claims and Other Secured Claims are not impaired under the Plan.  All other classes of Claims are impaired under the Plan.

3.2    <u>Impairment Controversies</u>.    If a dispute arises as to whether any Claim, or any class of Claims, is impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such dispute.

3.3    <u>Claim Charts</u>.  Claims (except for Administrative Expense Claims, Professional Fee Claims, and Priority Tax Claims, which are required to be classified pursuant to Section 1123(a)(1) of the Bankruptcy Code) are classified according to the following charts:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| One | Priority Non-Tax Claims | Unimpaired | No |
| Two | Escrow Agent/Certificate Holders Claim | Impaired | Yes |
| Three | PBGC Prepetition Claim | Impaired | Yes |
| Four | Other Secured Claims (Includes Bowdon Hospital Authority) | Unimpaired | No |
| Five | General Unsecured Claims | Impaired | Yes |

## ARTICLE 4
## PROVISIONS FOR TREATMENT OF CLAIMS UNDER THE PLAN

Claims shall receive the following treatment:

4.1     *Class One - Priority Non-Tax Claims (Unimpaired).*  On, or as soon as reasonably practicable after, the latest of (i) the Effective Date, (ii) the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or (iii) the date on which such Priority Non-Tax Claim becomes due and payable pursuant to any agreement between the Debtor and a holder of a Priority Non-Tax Claim, each holder of an Allowed Priority Non-Tax Claim shall receive from the Disbursing Agent in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Priority Non-Tax Claim (a) Cash equal to the unpaid portion of such Allowed Priority Non-Tax Claim or (b) such other treatment as the Debtor (or Reorganized Debtor) and such holder shall have agreed in writing.  All Allowed Priority Non-Tax Claims which are not by their terms due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof.

The Debtor is aware of only one Priority Non-Tax Claim, a 503(b)(9) Claim, which has been satisfied.  The Debtor is unaware of any other Priority Non-Tax Claims and no other Creditor has filed a proof of claim alleging to be a holder of a Priority Non-Tax Claim.  This Class is <u>not</u> impaired, and therefore is not entitled to vote on the Plan.

4.2     *Class Two - Escrow Agent/Certificate Holders Secured Claim and Unsecured Claim (Impaired).*

(1)     <u>Treatment</u>.  In full satisfaction of the Escrow Agent/Certificate Holder Claims, the Certificate Holders will retain a Secured Claim against the Debtor's real property known as 101 KidsPeace Drive, Bowdon, Carroll County, Georgia 30108, defined as the Bowden Campus, in the reduced amount of $1.35 million payable with interest at 5% per annum on a 30 year amortization schedule in constant monthly principle and interest payments starting on the first day of the month succeeding the Effective Date.

11

(2)     Additional Distribution.   In the event that the Debtor refinances the obligation, sells or leases (including any installment sale) the Bowdon Campus and/or its business (a "Sale Transaction") within five years of the Effective Date, then the Escrow Agent/ Certificate Holders will receive the following payment in full satisfaction of their claims:

a)      If sold on or before the second anniversary of the Effective Date – The Escrow Agent/Certificate Holders will receive $1.75 MM less any principal payments made by the Debtor (after payment of any obligation that remains due and owing under the Plan to the pre-petition General Unsecured Creditors);

b)      If sold after the second anniversary and on or before the fourth anniversary of the Effective Date – The Escrow Agent/Certificate Holders will receive $1.6 MM less any principal payments made by the Debtor (after payment of any obligation that remains due and owing under the Plan to the pre-petition General Unsecured Creditors);

c)      If sold after the fourth anniversary and on or before the fifth anniversary of the Effective Date – The Escrow Agent/Certificate Holders will receive $1.5 MM less any principal payments made by the Debtor (after payment of any obligation that remains due and owing under the Plan to the pre-petition General Unsecured Creditors); and

d)      A Sale Transaction shall not include a disposition of the Debtor where the Debtor operates as a stand-alone entity no longer affiliated with KidsPeace Corporation; provided however, that under such scenario the above Additional Distributions will remain in full force and effect for the Debtor upon its divestiture from KidsPeace Corporation.

(3)     Loan Modification.   The Debtor shall execute certain loan and escrow agreement modification documents, including such documents evidencing the required modifications to the Certificates (collectively, the "Loan Modification") incorporating the treatment under this Plan as it pertains to the Escrow Agent/Certificate Holder Claims.

(4)     Allowance.   The Escrow Agent/Certificate Holder Claims shall be deemed Allowed as a Secured Claim in an amount equal to $1.35 million.   The Escrow Agent/Certificate Holders will receive nothing under this Plan on account of the Escrow Agent/Certificate Holder Unsecured Claims.

4.3     *Class Three — PBGC Secured Claim and Unsecured Claim (Impaired).*

(1)     Treatment.   In full satisfaction of all PBGC Prepetition Claims, the Debtor agrees to be obligated jointly and severally for the full amount of the PBGC Note along with the KPC Reorganized Debtors, pursuant to the terms of the PBGC Note.   The Debtor shall be a co-obligor on the PBGC Note effective upon Plan confirmation.

(2)     Allowance.  The PBGC Prepetition Claims shall be deemed an Allowed Unsecured Claim in the amount of $13,500,000 less the PBGC Liens.

4.4     *Class Four - Other Secured Claims (Bowdon Hospital Authority) (Unimpaired).* On, or as soon as reasonably practicable after, the latest of (i) the Effective Date, (ii) the date on which such Other Secured Claim becomes an Allowed Other Secured Claim or (iii) the date on which such Other Secured Claim becomes due and payable pursuant to an agreement between the Debtor and the holder of an Allowed Other Secured Claim, each holder of an Allowed Other Secured Claim shall receive from the Reorganized Debtor in full satisfaction, settlement, release and discharge of such Allowed Other Secured Claim, and in exchange for such Allowed Other Secured Claim, at the sole discretion of the Debtor, (a) Cash equal to the unpaid portion of such Allowed Other Secured Claim, (b) reinstatement of the legal, equitable and contractual rights of the holder of such Allowed Other Secured Claim, or (c) such other treatment as the Debtor (or Reorganized Debtor) and such holder shall have agreed in writing. Pursuant to the Plan, the Debtor's failure to object to any Other Secured Claim in the Chapter 11 Case shall be without prejudice to the rights of the Debtor or the Reorganized Debtor to contest or otherwise defend against such Claim in the appropriate forum when and if such Claim is sought to be enforced by the holder of such Claim. Nothing in the Plan or elsewhere shall preclude the Debtor or Reorganized Debtor from challenging the validity of any alleged Encumbrance on any asset of the Debtor or the value of any collateral.

4.5     *Class Five —General Unsecured Claims (Impaired).*

(1)     Treatment.  Each holder of an Allowed General Unsecured Claim will receive, in full satisfaction of such holder's Allowed General Unsecured Claim, fifteen percent (15%) of the Allowed Claim amount of such General Unsecured Claim, to be paid in the following manner:

(A)     All General Unsecured Claims that are Allowed Claims as of the Effective Date will receive: (A) five percent (5%) of such Allowed Claim in Cash on the Effective Date; (B) five percent (5%) of such Allowed Claim in Cash on the first anniversary of the Effective Date; and (C) five percent (5%) of such Allowed Claim in Cash on the second anniversary of the Effective Date;

(B)     All General Unsecured Claims that are not Allowed Claims as of the Effective Date will receive: (A) five percent (5%) of such Allowed Claim in Cash on the date such General Unsecured Claim becomes an Allowed Claim; (B) five percent (5%) of such Allowed Claim in Cash on the first anniversary of the Effective Date, or if the Claim is not an Allowed Claim by such date, the date the claim becomes an Allowed Claim; and (C) five percent (5%) of such Allowed Claim in Cash on the second anniversary of the Effective Date, or if the Claim is not an Allowed Claim by such date, the date the claim becomes an Allowed Claim.

(2)     Alternate Treatment.  Each Holder of a General Unsecured Claim may elect, in the alternative, on an opt-in basis, in full satisfaction of such holder's Allowed General Unsecured Claim, the following treatment (the "Alternate Creditor Treatment"):

(A)     Any Holder of an Allowed General Unsecured Claim in an amount equal to or less than $10,000 may elect to receive an amount equal to 10% of such Holder's Allowed Claim payable on the Effective Date (or upon such later date following the Effective Date that the Claim becomes an Allowed Claim).

(B)     Any holder of an Allowed General Unsecured Claim in an amount over $10,000 may elect to have such Holder's Claim treated as an Allowed Claim in a reduced amount equal to $10,000 and to receive under the Plan, in lieu of the treatment specified in subsection (1) above, an amount equal to 10% of such $10,000 Allowed Claim (i.e., $1,000) payable in Cash on the Effective Date (or upon such later date following the Effective Date that the Claim becomes an Allowed Claim) in full satisfaction of such Holder's Allowed Claim.

For clarity, the Escrow Agent/Certificate Holders Unsecured Claims and the PBGC Unsecured Claims shall not be included in Class Five and, accordingly, will not receive the treatment afforded members of Class Five in this Plan.

4.6     Equity Interest of the Debtor

The Debtor is a non-profit entity.  The existing corporate organization structure will remain the same on the Effective Date, with the equity interest holder of the Debtor retaining its equity interest.

## ARTICLE 5
## PROVISIONS FOR TREATMENT OF
## UNCLASSIFIED CLAIMS UNDER THE PLAN

5.1     Unclassified Claims.  Administrative Expense Claims and Priority Tax Claims are treated in accordance with Sections 1129(a)(9)(A) and 1129(a)(9)(C) of the Bankruptcy Code, respectively. Administrative Expense Claims and Priority Tax Claims are not designated as classes of Claims for the purposes of the Plan or for the purposes of Sections 1123, 1124, 1125, 1126 or 1129 of the Bankruptcy Code.

5.2     Treatment of Administrative Expense Claims.  All Administrative Expense Claims shall be treated as follows:

(a)     Time for Filing Administrative Expense Claims.  The holder of an Administrative Expense Claim, other than (i) a Fee Claim, (ii) a liability incurred and payable after the Petition Date in the ordinary course of business by the Debtor, (iv) a Section 503(b)(9) Claim or (v) an Administrative Expense Claim that has been Allowed on or before the Effective Date, must file

14

with the Bankruptcy Court and serve on the Debtor, the Committee Representative and the U.S. Trustee, notice of such Administrative Expense Claim within thirty (30) days after service of Notice of Effective Date or such other specific date as may be established by the Bankruptcy Court. Such notice must include (a) the name of the holder of the Claim, (b) the amount of the Claim and (c) the basis of the Claim (including any documentation evidencing or supporting such Claim). THE FAILURE TO FILE A NOTICE OF AN ADMINISTRATIVE EXPENSE CLAIM ON OR BEFORE THE FOREGOING DEADLINE AND THE FAILURE TO SERVE SUCH NOTICE TIMELY AND PROPERLY SHALL RESULT IN THE ADMINISTRATIVE EXPENSE CLAIM BEING FOREVER BARRED, DISALLOWED AND DISCHARGED WITHOUT FURTHER ORDER OF THE BANKRUPTCY COURT.

For the avoidance of any doubt, no holder of an Administrative Expense Claim on account of a liability incurred and payable after the Petition Date in the ordinary course of the Debtor's business shall be required to file a notice of an Administrative Expense Claim in accordance with Section 5.2(a) of the Plan, in order to be entitled to payment, in the ordinary course of business, on account of such Administrative Expense Claim.

(b)      *Time for Filing Fee Claims.*  Each Professional who holds or asserts a Fee Claim shall be required to file with the Bankruptcy Court, and serve on the U.S. Trustee, the Committee Representative and the Debtor, and all other persons and entities that have requested notice pursuant to Fed. R. Bankr. P. 2002, a Fee Application within forty-five (45) days after the Effective Date or such other specific date as may be established by the Bankruptcy Court. THE FAILURE TO FILE TIMELY AND SERVE SUCH FEE APPLICATION MAY RESULT IN THE FEE CLAIM BEING FOREVER BARRED, DISALLOWED AND DISCHARGED.  For the avoidance of doubt, pursuant to the KPC Reorganized Debtors Confirmed Plan and the KPC Confirmation Order, any professionals retained by the Committee Representative are not required to file any fee applications with respect to their services on behalf of the Committee Representative.

(c)      *Time for Filing Section 503(b)(9) Claims.*  Each holder of a Section 503(b)(9) Claim was required to file a proof of claim asserting Section 503(b)(9) priority prior to August 30, 2013. THE FAILURE TO HAVE FILED SUCH A CLAIM BY THE SECTION 503(b)(9) BAR DATE SHALL RESULT IN THE SECTION 503(b)(9) CLAIM BEING DEEMED DISALLOWED AS AN ADMINISTRATIVE EXPENSE CLAIM; PROVIDED, HOWEVER, THAT SUCH CLAIM TO THE EXTENT ALLOWED SHALL BE TREATED AS A GENERAL UNSECURED CLAIM.

(d)      *Allowance of Administrative Expense Claims, Fee Claims and Section 503(b)(9) Claims.* An Administrative Expense Claim (other than a Fee Claim or Section 503(b)(9) Claim) with respect to which notice has been properly filed and served pursuant to Section 5.3(a), or a Section 503(b)(9) Claim with respect to which a proof of claim has been properly filed before the Section 503(b)(9) Bar Date and which has not been paid before the Effective Date, shall become an Allowed Administrative Expense Claim if no objection is filed within sixty (60) days after the later of (i) the Effective Date or (ii) if applicable, the date of service of the applicable notice of Administrative Expense Claim or such later date as may be approved by the Bankruptcy Court on motion of a party in interest, without notice or a hearing. If an objection is filed within such 60-day period (or any extension thereof), the Administrative Expense Claim shall become an

Allowed Administrative Expense Claim only to the extent allowed by Final Order. A Fee Claim in respect of which a Fee Application has been properly filed and served pursuant to Section 5.2(b) shall become an Allowed Administrative Expense Claim only to the extent allowed by Final Order.

(e)    *Payment of Allowed Administrative Expense Claims.*    On, or as soon as reasonably practicable after, the latest of (a) the Effective Date, (b) the date on which an Administrative Expense Claim becomes Allowed or (c) the date on which such Administrative Expense Claim becomes due and payable pursuant to any agreement between the Debtor and the holder of the Administrative Expense Claim, each holder of an Allowed Administrative Expense Claim (other than (i) an Administrative Expense Claim on account of a liability incurred and payable after the Petition Date in the ordinary course of the Debtor's business or (ii) an Administrative Expense Claim, including but not limited to a Section 503(b)(9) Claim, already paid in full by the Debtor or the Reorganized Debtor) shall receive from the Disbursing Agent in full satisfaction of such Claims (i) the amount of such holder's Allowed Administrative Expense Claim in one Cash payment or (ii) such other treatment as may be agreed upon in writing by the Debtor and such holder; provided, however, that an Administrative Expense Claim representing a liability incurred in the ordinary course of business of the Debtor shall be paid by the Reorganized Debtor in the ordinary course of business.  For the avoidance of doubt, nothing contained herein shall relieve the Debtor of its obligations to pay Allowed Section 503(b)(9) Claims following the first date scheduled for a hearing on the Disclosure Statement.

(f)    *Treatment of Priority Tax Claims.*    On, or as soon as reasonably practicable after the latest of (i) the Effective Date, (ii) the date on which a Priority Tax Claim becomes Allowed or (iii) the date on which such Priority Tax Claim becomes due and payable pursuant to any agreement between the Debtor and the holder of the Priority Tax Claim, each holder of an Allowed Priority Tax Claim shall receive from the Disbursing Agent in full satisfaction of such holder's Allowed Priority Tax Claim, (a) the amount of such holder's Allowed Priority Tax Claim in Cash, or (b) such other treatment as may be agreed upon in writing by such holder; provided that such agreed-upon treatment may not provide such holder with a return having a present value as of the Effective Date that is greater than the amount of such holder's Allowed Priority Tax Claim.  The Confirmation Order shall enjoin any holder of an Allowed Priority Tax Claim from commencing or continuing any action or proceeding against any responsible person or officer of the Debtor that otherwise would be liable to such holder for payment of a Priority Tax Claim so long as the Debtor is in compliance with this Section 5.2. So long as the holder of an Allowed Priority Tax Claim is enjoined from commencing or continuing any action or proceeding against any responsible person or officer under this Section 5.2 or pursuant to the Confirmation Order, the statute of limitations for commencing or continuing any such action or proceeding shall be tolled.

5.3    <u>Payment of Interim Amounts</u>.    Professionals shall be paid pursuant to the "Monthly Statement" process set forth in the Professional Fee Order with respect to all calendar months ending prior to the Effective Date.

5.4    <u>Post-Effective Date Fees and Expenses</u>.  On the Effective Date, any requirement that Professionals comply with Sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after the Effective Date shall terminate

and the Reorganized Debtor may employ and pay any Professional (including any Professional retained after the Effective Date) in the ordinary course of business without any further notice to or action, or, or approval of the Bankruptcy Court.

# ARTICLE 6
## ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS

6.1     Classes Entitled to Vote.  The Debtor is soliciting acceptances of the Plan from the holders of all Claims in Classes Two, Three and Five.

6.2     Class Acceptance Requirement.  A class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such class that have voted on the Plan.

6.3     Cramdown.  If all applicable requirements for confirmation of the Plan are met as set forth in Section 1129(a) of the Bankruptcy Code, except sub-Section (8) thereof, the Plan shall be treated as a request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code, notwithstanding the failure to satisfy the requirements of Section 1129(a)(8), on the basis that the Plan is fair and equitable and does not discriminate unfairly with respect to each class of Claims that is impaired under, and has not accepted, the Plan.

# ARTICLE 7
## MEANS FOR IMPLEMENTATION OF THE PLAN

7.1     Compromise of Controversies.

(a)     The provisions of the Plan constitute a good faith compromise and settlement, in consideration for the distributions and other benefits provided under the Plan, of all Claims and controversies resolved under the Plan.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under Bankruptcy Rule 9019.

(b)     The provisions of the Plan represent a settlement between the Debtor, the Escrow Agent, and the PBGC following extensive arm's-length and good faith negotiations and, pursuant to Section 7.1(a), the Bankruptcy Court's entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such settlement under Bankruptcy Rule 9019.

7.2     Vesting of Assets.

On the Effective Date, pursuant to Sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtor's Estate and any property acquired by the Debtor or Reorganized Debtor under the Plan shall vest in the Reorganized Debtor free and clear of all Claims, liens, encumbrances, charges and other interests, except as provided herein. On and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire or dispose of property and, subject to Article 11 hereof, may compromise or settle any Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the

Confirmation Order. Without limiting the foregoing, the Reorganized Debtor may pay the charges that it incurs on or after the Effective Date for all fees, disbursements, expenses or related support services of professionals without application to, or approval of, the Bankruptcy Court pursuant to the terms of any agreement between any such professional and the applicable Reorganized Debtor.

7.3    Continued Corporate Existence.

The Reorganized Debtor, shall continue to exist on and after the Effective Date, with all the powers available to such legal entity under applicable law and pursuant to the applicable Constituent Documents, and without prejudice to any right to alter or terminate such existence (whether by merger, sale, or otherwise) in accordance with such applicable law.  On and after the Effective Date, the Reorganized Debtor may operate its respective business and use, acquire, lease, sell, or dispose of their assets without supervision or approval by the Bankruptcy Court and free from any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

7.4    Officers, Directors and Post Confirmation Management.

Pursuant to section 1129(a)(5) of the Bankruptcy Code and as of the Effective Date, the officers and directors of the Reorganized Debtor shall be as set forth in Exhibit B to the Disclosure Statement.  Subsequent to the Effective Date, the officers and directors of the Reorganized Debtor shall be selected and determined in accordance with the provisions of the Constituent Documents and applicable law.

7.5    Corporate Action.

(a)    *Entry of Confirmation Order.*  The entry of the Confirmation Order shall constitute authorization for the Debtor and the Reorganized Debtor, as the case may be, to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation, including without limitation any action required by the officers or directors of the Debtor and the Reorganized Debtor, including, among other things, (i) all transfers of Assets that are to occur pursuant to the Plan; (ii) the incurrence of all obligations contemplated by the Plan and the making of all Plan Distributions; (iii) the reinstatement and assumption of all indemnity obligations to the officers, directors and employees of the Debtor, subject to Section 7.6(b) of the Plan; (iv) the implementation of all settlements and compromises as set forth in or contemplated by the Plan; and (v) entering into any and all transactions, contracts or arrangements permitted by applicable law, order, rule or regulation including all documents contemplated by the Plan.

(b)    *Debtor's Indemnification Obligations.*  Any obligations of the Debtor to indemnify and hold harmless its current and former officers, directors and employees, whether arising under the Debtor's Constituent Documents, contract, law or equity, shall be fully reinstated and assumed by the Reorganized Debtor upon the occurrence of the Effective Date with the same effect as though such obligations constituted executory contracts that are assumed under Section 365 of the Bankruptcy Code, and all such obligations shall be fully enforceable on

18

their terms from and after the Effective Date, provided, however, that any such obligations shall be payable solely from insurance coverage, if any.  Nothing in the Plan shall release any obligations of the Debtor to indemnify and hold harmless their current and former officers, directors and employees provided, however, that any such obligations shall be payable solely from insurance coverage, if any.

7.6     Resolution, Settlement and Treatment of the Claims of the Escrow Agent and Certificate Holders.

As provided in Section 7.1(a), the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the settlement with the Escrow Agent and Certificate Holders as described in Section 4.2 under Bankruptcy Rule 9019.

7.7     Resolution, Settlement and Treatment of the Claims of the PBGC.

As provided in Section 7.1(a), the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the settlement with the PBGC described in Section 4.3 under Bankruptcy Rule 9019.

7.8     Treatment of General Unsecured Claims.

(a)     All General Unsecured Claims shall be treated as set forth in Section 4.5 and Article 4 hereof.

(b)     Claims Objection and Settlement Procedures.   The Debtor will handle claims reconciliation and objection process and commence claims objections as set forth in Article 10 hereof.

(c)     Committee Representative.   The Committee Representative shall serve until all General Unsecured Claims are paid in full all amounts to which they are entitled under this Plan. The Committee Representative shall have standing and capacity to prepare and prosecute (i) applications for or objections to the payment of fees and reimbursement of expenses incurred by the Committee or any of the professionals in the KPC Reorganized Debtors' chapter 11 cases, and (ii) any appeals of the KPC Confirmation Order.  With respect to the Debtor, the Committee Representative was given standing (and, to the extent necessary, shall be given standing under the Plan), on behalf of the Committee to monitor, appear and be heard in the Bankruptcy Court, or in any other court with jurisdiction over the Debtor, with respect to the KPC Reorganized Debtors' and the Debtor's agreement to provide holders of valid General Unsecured Claims of the Debtor with at least the same treatment as that provided to holders of allowed general unsecured claims under the KPC Reorganized Debtors Confirmed Plan (Allowed Class A5 General Unsecured Claims under the KPC Reorganized Debtors Confirmed Plan).  $50,000 was provided to the Committee Representative by the KPC Reorganized Debtors to cover costs associated with the Committee Representative and/or his professionals rendering services relating to the Debtor and its post-confirmation representation relating to the KPC Reorganized Debtors.  Payment to the Committee Representative in the Debtor's Chapter 11 Case is capped by the $50,000 provided by the KPC Reorganized Debtors.

(d)    <u>Reorganized Debtor to Make all Payments</u>.  Payments of all amounts owed to Holders of Allowed General Unsecured Claims under the Plan will be made by the Disbursing Agent to the Holders of such Allowed General Unsecured Claims.  The Debtor shall be required to have sufficient cash on hand to fund all payments required to be made to Holders of Allowed General Unsecured Claims on the Effective Date as part of the Initial Distribution.  The Bankruptcy Court shall retain jurisdiction to enforce the required payments to the Holders of Allowed General Unsecured Claims.

7.9    <u>Effective Date and Initial Distribution Date Payments</u>.  On, or as soon as reasonably practical after, the Effective Date, the Debtor shall make an estimated payment of approximately $55,000 in Cash, from funds on hand, to a segregated bank account for purposes of satisfying the Initial Distribution.

7.10    <u>Operations Between the Confirmation Date and the Effective Date.</u>  Through the Effective Date, the Debtor shall continue to operate its business as a Debtor in Possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules and all orders of the Bankruptcy Court that are then in full force and effect.

7.12    <u>Waiver and Release of Avoidance Actions.</u>  As of the Effective Date all Avoidance Actions and all rights and remedies under Section 502(d) of the Bankruptcy Code with respect to Avoidance Actions shall be deemed fully and unconditionally waived and released by the Debtor and/or the Reorganized Debtor, on behalf of themselves, their estates and any party in interest who may have or acquire standing to pursue or recover the proceeds of any Avoidance Actions.  Other than as specified above or otherwise expressly set forth herein, nothing in the Plan or the Confirmation Order shall be deemed a waiver or relinquishment of any Cause of Action, right of setoff, or other legal or equitable defense which the Debtor had immediately prior to the Petition Date other than with respect to Avoidance Actions.

## ARTICLE 8
## THE DISBURSING AGENT

8.1    <u>Disbursing Agent</u>.  A separate disbursing agent shall not be appointed.  The Reorganized Debtor shall serve as disbursing agent for the purposes of making all distributions on the Effective Date and as provided for under the Plan.

8.2    <u>Powers and Duties</u>.  Pursuant to the terms and provisions of the Plan, the Reorganized Debtor shall be authorized and directed to (a) take all steps and execute all instruments and documents necessary to make Plan Distributions to holders of Allowed Claims, (b) comply with the Plan and its obligations hereunder, (c) pending distribution pursuant to the Plan, hold in a segregated trust accounts all Cash required by Section 7.8(d) and 7.9 of the Plan and deposit in the future in a segregated trust account and disburse there from any funds necessary to satisfy Subsequent Distributions; and (d) exercise such other powers as may be vested in the Reorganized Debtor pursuant to the Plan, the Plan Documents or order of the Bankruptcy Court. The Reorganized Debtor shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court or required by the Bankruptcy Code or the Bankruptcy Rules.

On, or as soon as practicable after the Effective Date, and thereafter as provided under the Plan, the Reorganized Debtor shall establish separate accounts with respect the Cash required by Sections 7.8(d) and 7.9 of the Plan, which shall be held in trust for the purposes set forth in the Plan, provided, however, that the Reorganized Debtor shall create segregated accounts to be used to pay (i) Allowed Fee Claims, (ii) the Opt-In Creditor Amount, and (iii) for such other purposes as set forth in the Plan.

## ARTICLE 9
## DISTRIBUTION PROVISIONS

9.1     Sources of Cash for Plan Distributions.  All Cash necessary for Plan Distributions shall come from cash on hand and continued operations of the Reorganized Debtor.

9.2     Plan Distributions.  Pursuant to the terms and provisions of the Plan, and except as stated in this Section 9.2 or otherwise in the Plan, the Reorganized Debtor shall make the required Plan Distributions specified under the Plan.

Notwithstanding anything to the contrary set forth herein, all Distributions payable under the Plan to holders of Certificates shall be paid by the Reorganized Debtor to the Escrow Agent, which shall distribute such Distributions, or cause such Distributions to be distributed, to the holders of the Certificates.

9.3     Timing of Plan Distributions.  In the event a Plan Distribution is payable on a day other than a Business Day, such Plan Distribution shall instead be paid on the immediately succeeding Business Day, but shall be deemed to have been made on the date otherwise due. A Plan Distribution shall be deemed to have been timely made if made on such date or within fourteen (14) days thereafter.

For federal income tax purposes, except to the extent a Plan Distribution is made in connection with reinstatement of an obligation pursuant to Section 1124 of the Bankruptcy Code, a Plan Distribution will be allocated first to the principal amount of a Claim and then, to the extent the Plan Distribution exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

9.4     Address for Delivery of Plan Distributions/Unclaimed Distributions.  Subject to Bankruptcy Rule 9010, any Plan Distribution or delivery to a holder of an Allowed Claim shall be made at the address of such holder as set forth (a) in the Schedules, (b) on the proof of Claim filed by such holder, (c) in any notice of assignment filed with the Bankruptcy Court with respect to such Claim pursuant to Bankruptcy Rule 3001(e), or (d) in any notice served by such holder giving details of a change of address. If any Plan Distribution is returned to the Reorganized Debtor as undeliverable, no Plan Distributions shall be made to such holder unless the Reorganized Debtor is notified of such holder's then current address within ninety (90) days after such Plan Distribution was returned. After such date, if such notice was not provided, a holder shall have forfeited its right to such Plan Distribution, and the undeliverable Plan Distributions shall be returned to the applicable Reorganized Debtor.

9.5     Time Bar to Cash Payments.  Checks issued in respect of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of sending to the Holder of

each such Allowed Claim. Requests for reissuance of any voided check shall be made directly to the Reorganized Debtor by the holder of the Allowed Claim to whom such check was originally issued. Any claim in respect of such a voided check shall be made within one hundred and eighty (180) days after the date of issuance of such check. If no request is made as provided in the preceding sentence, any Claims in respect of such void check shall be discharged and forever barred and such unclaimed Plan Distribution shall revert to the Reorganized Debtor.

9.6    <u>Manner of Payment under the Plan.</u>    Unless the Person receiving a Plan Distribution agrees otherwise, any Plan Distribution to be made in Cash under the Plan shall be made, at the election of the Reorganized Debtor, by check drawn on a domestic bank or by wire transfer from a domestic bank. Cash payments to foreign creditors may, in addition to the foregoing, be made, at the option of the Reorganized Debtor, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

9.7    <u>Fractional Plan Distributions.</u> Notwithstanding anything to the contrary contained herein, no Plan Distributions of fractions of dollars are required to be made. At the Reorganized Debtor's option, fractions of dollars may be rounded to the nearest whole unit (with any amount equal to or less than one-half dollar to be rounded down).

9.8    <u>Surrender and Cancellation of Instruments.</u>    As a condition to receiving any Plan Distribution, the holder of an Allowed Claim evidenced by a certificate, instrument or note, other than any such certificate, instrument or note that is being reinstated or being left unimpaired under the Plan, shall (a) surrender such certificate, instrument or note representing such Claim, and (b) execute and deliver such other documents as may be necessary to effectuate the Plan in the sole determination of the Reorganized Debtor. Such certificate, instrument or note shall thereafter be cancelled and extinguished. The Reorganized Debtor shall have the right to withhold any Plan Distribution to be made to or on behalf of any holder of such Claims unless and until (i) such certificates, instruments or notes are surrendered, or (ii) any relevant holder provides to the Reorganized Debtor an affidavit of loss or such other documents as may be required by the Reorganized Debtor together with an appropriate indemnity in the customary form. Any such holder who fails to surrender such certificates, instruments or notes, or otherwise fails to deliver an affidavit of loss and indemnity prior to the second anniversary of the Effective Date, shall be deemed to have forfeited its Claims and shall not participate in any Plan Distribution. All property in respect of such forfeited Claims shall revert to the Reorganized Debtor, as applicable.

9.9    <u>Record Date for Distributions.</u>    At the close of business on the Distribution Record Date, the transfer records for Claims shall be closed, and there shall be no further changes in the record holders of such Claims. None of the Reorganized Debtor, the Claims Agent, nor the Escrow Agent shall have any obligation to recognize any transfer of claims occurring after the Distribution Record Date, and they shall be entitled instead to recognize and deal for all purposes under the Plan with only those record holders as of the close of business on the Distribution Record Date. Notwithstanding the foregoing, or anything to the contrary in the Plan, the Escrow Agent shall be entitled in its sole discretion to establish one or more record dates for the Certificate Holders for the purposes of distributions on the Certificates hereunder.

9.10    Subsequent Distributions.    The Reorganized Debtor shall be authorized and directed to make subsequent Plan Distributions on account of such Claims which are either: (a) Allowed Claims as of the Initial Distribution Date, (b) Contested Claims as of the Initial Distribution Date but which subsequently become Allowed Claims pursuant to Article 10 of this Plan, or (c) payments to Holders of Allowed Claims as otherwise required under the Plan. The Reorganized Debtor shall make the subsequent Plan Distributions from time to time and in the exercise of its business judgment.

9.11    *De Minimis* Distributions.    The Reorganized Debtor shall not have any obligation to make any distribution to any holder of an Allowed Claim if the amount to be distributed is less than $10.00.

# ARTICLE 10
# PROCEDURES FOR RESOLVING AND TREATING CONTESTED CLAIMS, OBJECTION TO CERTAIN CLAIMS AND AMENDMENT TO SCHEDULES

10.1    Prosecution of Contested Claims.    Except as provided herein, after the Effective Date, only the Reorganized Debtor may object to the allowance of Claims. All objections that are filed and prosecuted as provided herein shall be litigated to Final Order or compromised and settled in accordance with Section 10.3.

10.2    Objection Deadline.    As soon as practicable, but in no event later than ninety (90) days after the Effective Date (subject to being extended as set forth herein or by order of the Bankruptcy Court upon motion of the Reorganized Debtor without notice, except to the Committee Representative, or a hearing), objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made.  The holder of a Claim subject to an objection will not receive a distribution on account of such Claim until such Claim is Allowed, provided, however, that the filing of a motion to extend the deadline to file objections to Claims shall automatically extend the claim objection deadline until a Final Order is entered or such motion. In the event that such motion to extend is denied, the claims objection deadline shall be the later of the then-current claims objection deadline (as previously extended, if applicable) or fourteen (14) days after the Bankruptcy Court's order denying the motion to extend the claims objection deadline.  The Reorganized Debtor shall review any Rejection Damage Claims to determine whether an objection to any such Claim is appropriate.

10.3    Amendment of Schedules.    The Debtor or Reorganized Debtor, after the Effective Date, shall have the authority to amend the Schedules with respect to any Claim and to make distributions based on such amended Schedules without approval of the Bankruptcy Court. If any amendment to the Schedules reduces the amount of a Claim or changes the nature or priority of a Claim, the Debtor will provide the holder of such Claim with notice of such amendment (with a copy to the Committee Representative) and the creditor parties will have 28 days to file an objection to such amendment with the Bankruptcy Court. If no such objection is filed, the Reorganized Debtor may proceed with distributions based on such amended Schedules without approval of the Bankruptcy Court.

10.4    <u>Claims Settlement.</u>    Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date, the Reorganized Debtor shall have authority to settle or compromise all Claims and Causes of Action without further review or approval of the Bankruptcy Court, except for Avoidance Actions against Holders of General Unsecured Claims, all of which Avoidance Actions are waived and released in accordance with Section 7.12.

10.5    <u>No Distribution Pending Allowance.</u> Notwithstanding any other provision hereof, if any portion of a Claim is a Contested Claim, and/or is subject to a pending objection that has not been resolved by Final Order, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Claim becomes an Allowed Claim that is not a Contested Claim, subject to the setoff rights preserved under the Plan.

10.6    <u>Entitlement to Plan Distributions Upon Allowance.</u>    When a Contested Claim becomes an Allowed Claim, the holder of such Claim shall thereupon become entitled to receive the Plan Distributions in respect of such Claim the same as though such Claim had been an Allowed Claim on the Effective Date.

# ARTICLE 11
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

11.1    <u>Assumption and Rejection of Executory Contracts and Unexpired Leases.</u>

(a)    *Executory Contracts and Unexpired Leases.*    All executory contracts and unexpired leases of the Debtor shall be rejected pursuant to the provisions of Section 365 of the Bankruptcy Code effective as of and subject to the occurrence of the Effective Date, unless another date is specified in the Plan, except: (i) any executory contracts and unexpired leases that are the subject of a motion to assume filed pursuant to Section 365 of the Bankruptcy Code by the Debtor before the Effective Date; (ii) contracts and leases listed in Schedule 1 attached to the Disclosure Statement; (iii) all executory contracts and unexpired leases assumed under the Plan or by order of the Bankruptcy Court entered before the Effective Date; and (iv) any agreement, obligation, security interest, transaction, or similar undertaking that the Debtor believes is not executory or a lease that is later determined by the Bankruptcy Court to be an executory contract or unexpired lease that is not subject to assumption or rejection under Section 365 of the Bankruptcy Code. Any order entered post-confirmation by the Bankruptcy Court, after notice and a hearing, authorizing the rejection of an executory contract or unexpired lease shall cause such rejection to be a prepetition breach under Sections 365(g) and 502(g) of the Bankruptcy Code, as if such relief was granted and such order was entered pre-confirmation.    The Debtor reserves the right to amend Disclosure Statement Schedule 1 prior to the entry of the Confirmation Order and subsequent to the entry of the Confirmation Order with respect to any executory contract or unexpired lease that is the subject of a dispute over the amount or manner of cure pursuant to Section 11.2 hereof and for which the Debtor makes a motion to reject such contract or lease based upon the existence of such dispute filed at any time. Each executory contract and unexpired lease to be assumed or rejected by the Debtor shall include modifications, amendments, supplements, restatements, or other similar agreements made directly or indirectly

24

by any agreement, instrument or other document that affects such executory contract or unexpired lease.

(b)    *Disclosure Statement Schedule 1.*   The inclusion of a contract, lease or other agreement on Disclosure Statement Schedule 1 shall not constitute an admission by the Debtor as to the characterization of whether any such included contract, lease or other agreement is, or is not, an executory contract or unexpired lease or whether any claimants under any such contract, lease or other agreement are time barred from asserting Claims against the Debtor. The Debtor reserves all rights with respect to the characterization of any such agreements.

(c)    *Motion to Reject.*   The Plan shall constitute a motion to reject the executory contracts and unexpired leases rejected pursuant to this Section 11.1, and the Debtor shall have no liability thereunder except as is specifically provided in the Plan. Entry of the Confirmation Order shall constitute approval of such rejections pursuant to Section 365(a) of the Bankruptcy Code, subject to the occurrence of the Effective Date, and a finding by the Bankruptcy Court that each such rejected agreement, executory contract or unexpired lease is burdensome and that the rejection thereof is in the best interests of the Debtor and its Estate.

(d)    *Motion to Assume.*   The Plan shall constitute a motion to assume all executory contracts and unexpired leases listed in Schedule 1 attached to the Disclosure Statement.  Entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such assumption pursuant to Sections 365(a) and (b) of the Bankruptcy Code, effective as of and subject to the occurrence of the Effective Date.

11.2    <u>Cure.</u>  Any monetary defaults under each executory contract and unexpired lease to be assumed under the Plan shall be satisfied pursuant to Section 365(b)(1) of the Bankruptcy Code: (a) by payment of the default amount in Cash on the Effective Date or as soon thereafter as practicable; or (b) on such other terms as agreed to by the parties to such executory contract or unexpired lease. In the event of a dispute regarding: (i) the amount of any cure payments; (ii) the ability to provide adequate assurance of future performance under the contract or lease to be assumed or assumed and assigned; or (iii) any other matter pertaining to assumption or assumption and assignment, the cure payments required by Section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving assumption or assignment, as applicable. Disclosure Statement Schedule 1 sets forth the Debtor's cure obligations for each agreement for which cure obligations must be satisfied as a condition to the assumption of such agreement. Any non-Debtor counterparty to an agreement listed on the Disclosure Statement Schedule 1 who disputes the scheduled cure obligation (or objects to the omission of a scheduled cure obligation) must file with the Bankruptcy Court, and serve upon the Debtor, a written objection to the cure obligation in the manner, and within such time period, as the Bankruptcy Court may direct. If a non-Debtor counterparty fails to file and serve an objection which complies with the foregoing, the cure obligation set forth on the Disclosure Statement Schedule 1 shall be binding on the non-Debtor counterparty, and the non-Debtor counterparty shall be deemed to have waived any and all objections to the assumption of the relevant agreement as proposed by the Debtor.

11.3    <u>Claims Arising from Rejected Contracts.</u>   Rejection Damage Claims must be submitted to the Claims Agent, with copies to counsel for the Debtor, by (a) with respect to any

executory contract or unexpired lease that is rejected pursuant to Section 11.1 of the Plan, the first Business Day that is no more than thirty (30) days following the Effective Date or, (b) with respect to any executory contract or unexpired lease that is rejected other than pursuant to Section 11.1 of the Plan, the first Business Day that is no more than thirty (30) days following the entry of an order of the Bankruptcy Court authorizing such rejection. Properly submitted Rejection Damage Claims shall be treated as General Unsecured Claims, subject to objection by the Reorganized Debtor. ANY REJECTION DAMAGE CLAIMS THAT ARE NOT PROPERLY SUBMITTED PURSUANT TO THIS SECTION 11.3 WILL FOREVER BE BARRED FROM ASSERTION AND SHALL NOT BE ENFORCEABLE AGAINST THE REORGANIZED DEBTOR, ITS RESPECTIVE ESTATE, AFFILIATES OR ASSETS.

**ARTICLE 12**
**CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN**
**AND THE OCCURRENCE OF THE EFFECTIVE DATE**

12.1    <u>Conditions Precedent to Confirmation.</u>  As conditions precedent to confirmation of the Plan, the Clerk of the Bankruptcy Court shall have entered an order or orders:

(i)    approving the Disclosure Statement as containing "adequate information" pursuant to Section 1125 of the Bankruptcy Code;

(ii)    authorizing the solicitation of votes with respect to the Plan; and

(iii)    determining that all applicable tests, standards and burdens in connection with the Plan have been duly satisfied and met by the Debtor and the Plan.

12.2    <u>Conditions Precedent to the Occurrence of the Effective Date.</u>  Unless waived in writing by the Debtor or the Escrow Agent with respect to clause (iii), the following are conditions precedent to the occurrence of the Effective Date:

(i)    the Confirmation Order shall have been entered by the Clerk of the Bankruptcy Court, be in full force and effect and not be subject to any stay or injunction;

(ii)    any necessary regulatory consents, authorizations and approvals have been given;

(iii)    any documents required in connection with the Loan Modification have been executed and delivered;

(iv)    all statutory fees and obligations then due and payable to the Office of the United States Trustee shall have been paid and satisfied in full; and

(v)    all other actions necessary to implement the terms of the Plan shall have been taken.

## ARTICLE 13
## RETENTION OF JURISDICTION

Pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, but solely to the extent permitted by applicable law, the Bankruptcy Court shall retain and shall have exclusive jurisdiction over any matter (a) arising under the Bankruptcy Code, (b) arising in or related to the Chapter 11 Case or the Plan or (c) that relates to the following:

(i)     To hear and determine any and all motions or applications pending on the Confirmation Date or thereafter brought in accordance with Article 11 hereof for the assumption or rejection of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear and determine any and all Claims and any related disputes (including, without limitation, the exercise or enforcement of setoff or recoupment rights, or rights against any third party or the property of any third party resulting therefrom or from the expiration, termination or liquidation of any executory contract or unexpired lease);

(ii)     To determine any and all adversary proceedings, applications, motions and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Reorganized Debtor after the Effective Date;

(iii)     To hear and determine any objections to the allowance of Claims, whether filed, asserted, or made before or after the Effective Date, including, without limitation, to hear and determine any objections to the classification of any Claim and to allow, disallow or estimate any Contested Claim in whole or in part;

(iv)     To issue such orders in aid of execution of the Plan to the extent authorized or contemplated by Section 1142 of the Bankruptcy Code;

(v)     To consider any modifications of the Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(vi)     To hear and determine all Fee Applications and applications for allowances of compensation and reimbursement of any other fees and expenses authorized to be paid or reimbursed under the Plan or the Bankruptcy Code;

(vii)     To hear and determine all controversies, suits and disputes that may relate to, impact upon, or arise in connection with the Plan or its interpretation, implementation, enforcement or consummation;

(viii)     To hear and determine all controversies, suits and disputes that may relate to, impact upon, or arise in connection with the Confirmation Order (and all exhibits to the Plan) or its interpretation, implementation, enforcement or consummation;

(ix)     To the extent that Bankruptcy Court approval is required, to consider and act on the compromise and settlement of any Claim or Cause of Action by, on behalf of, or against the Estate;

(x)    To determine such other matters that may be set forth in the Plan, or the Confirmation Order, or that may arise in connection with the Plan, or the Confirmation Order;

(xi)    To hear and determine matters concerning state, local and federal taxes, fines, penalties, or additions to taxes for which the Reorganized Debtor, the Debtor in Possession, or the Disbursing Agent may be liable, directly or indirectly, in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

(xii)    To hear and determine all controversies, suits and disputes that may relate to, impact upon, or arise in connection with any setoff and/or recoupment rights of the Debtor or any Person under the Plan;

(xiii)    To hear and determine all controversies, suits and disputes that may relate to, impact upon, or arise in connection with Causes of Action of the Debtor (excluding Avoidance Actions) commenced before or after the Effective Date;

(xiv)    To enter an order or final decree closing the Chapter 11 Case;

(xv)    To hear any motion filed or action commenced by the Committee Representative in accordance with the terms of the Plan;

(xvi)    To issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation or enforcement of the Plan or the Confirmation Order; and;

(xvii)    To hear and determine any other matters related hereto and are not inconsistent with chapter 11 of the Bankruptcy Code.

## ARTICLE 14
## MISCELLANEOUS PROVISIONS

14.1    <u>Subordination.</u>    The right of the Debtor to seek subordination of any lien, security interest, or Claim pursuant to Section 510 of the Bankruptcy Code is fully reserved, and the treatment afforded any Claim that becomes subordinated at any time after the Petition Date shall be modified to reflect such subordination. Unless the Confirmation Order provides otherwise, no Plan Distributions shall be made on account of a subordinated claim.

14.2    <u>Payment of Statutory Fees.</u>    All fees payable pursuant to Section 1930 of Title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Debtor on or before the Effective Date.  Fees pursuant to 28 U.S.C. Section 1930 shall continue to be payable to the Office of the United States Trustee post-confirmation until such time as the case is converted, dismissed, or closed pursuant to a Final Decree.

14.3    <u>Satisfaction of Claims.</u>    The rights afforded in the Plan and the treatment of all Claims herein shall be in exchange for and in complete satisfaction, discharge and release of all Claims of any nature whatsoever, including any accrued post-petition interest, against the Debtor

and the Debtor in Possession or its Estate, Assets, properties, or interests in property.  Except as otherwise expressly provided in the Plan, on the Effective Date, all Claims against the Debtor and the Debtor in Possession shall be satisfied, discharged and released in full. The Reorganized Debtor shall not be responsible for any pre-Effective Date obligations of the Debtor or the Debtor in Possession, except those expressly assumed by the Reorganized Debtor, as applicable. Except as otherwise provided herein, all Persons and Entities shall be precluded and forever barred from asserting against the Reorganized Debtor, its respective successors or assigns, or its Estate, Assets, properties, or interests in property, any event, occurrence, condition, thing, or other or further Claims or causes of action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date.

14.4    <u>Releases</u>.

(a)    *Releases by Debtor*.  **For good and valuable consideration, the adequacy of which is hereby confirmed, upon the Effective Date, the Debtor shall be deemed forever to release, waive, and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities (other than any rights to enforce the terms of the Plan and the contracts, instruments, releases, and other agreements or documents delivered in connection with the Plan), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise that are based in whole or in part on any act, omission, transaction, event, cause, matter, or thing taking place on or before the Effective Date against (i) the Certificate Holders, if the Certificate Holders have voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code, (iii) the Escrow Agent, if the Certificate Holders have voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code, unless the Escrow Agent has filed an objection to the Plan, (iv) the PBGC, if PBGC has voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code, unless PBGC has filed an objection to the Plan and (v) the KidsPeace National Centers of Georgia, Inc. Loan Agreement Trust.**

(b)    *Releases by the Escrow Agent, the Certificate Holders, KidsPeace National Centers of Georgia, Inc. Loan Agreement Trust and the PBGC*.  **For good and valuable consideration, the adequacy of which is hereby confirmed, assuming that the Plan is confirmed as provided herein or otherwise with the consent of the Escrow Agent, the Certificate Holders and the PBGC, upon the Effective Date, the Escrow Agent, the Certificate Holders, the KidsPeace National Centers of Georgia, Inc. Loan Agreement Trust and the PBGC (each respectively only if it is eligible to receive a release pursuant to Section 14.4(a)) shall be deemed forever to release, waive, and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities (other than any rights to enforce the terms of the Plan and the contracts, instruments, releases, and other agreements or documents delivered in connection with the Plan, including without limitation, the obligations of the Debtor and the Reorganized Debtor), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise that are based in whole or in part on any act, omission, transaction,**

29

**event, cause, matter, or thing taking place on or before the Effective Date against the Debtor.**

14.5    Exculpation - Debtor, Escrow Agent, Certificate Holders, Committee, Committee Representative, KidsPeace National Centers of Georgia, Inc. Loan Agreement Trust and the PBGC.    Neither the Debtor, the Escrow Agent, the Certificate Holders, the Committee, the Committee Representative, the KidsPeace National Centers of Georgia, Inc. Loan Agreement Trust, the PBGC, nor their officers, directors, employees, agents, members and/or Professionals shall be liable for any claims, obligations, suits, judgments, demands, debts, rights, causes of action or liabilities related to or arising in connection with or out of the administration of the Chapter 11 Case, pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct as determined by Final Order of the Bankruptcy Court. The Confirmation Order shall enjoin all holders of Claims and other parties from asserting or prosecuting any claims, obligations, suits, judgments, demands, debts, rights, causes of action or liabilities against the Debtor, the Escrow Agent, the PBGC, the Committee, the Committee Representative, the KidsPeace National Centers of Georgia, Inc. Loan Agreement Trust and/or their officers, directors, employees, agents, members and Professionals as to which such Person has been exculpated from liability pursuant to the preceding sentence.

14.6    Injunction.

(a)    *General.*  **All Entities who have held, hold, or may hold Claims arising on or before the Effective Date and all other parties in interest in the Chapter 11 Case, along with their respective current and former employees, agents, officers, trustees, principals, and affiliates, permanently are enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind against the Debtor or the Reorganized Debtor or against the property or interests in property of the Debtor or Reorganized Debtor, (ii) enforcing, attaching, collecting, or recovering by any manner or means of any judgment, award, decree, or order against the Debtor or Reorganized Debtor or against the property or interests in property of the Debtor or Reorganized Debtor, (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or Reorganized Debtor or against the property or interests in property of the Debtor or Reorganized Debtor, or (iv) asserting any right of setoff or subrogation of any kind against any obligation due from the Debtor or Reorganized Debtor or against the property or interests in property of the Debtor or Reorganized Debtor, on account of such Claims; *provided, however,* that nothing contained herein shall preclude such Entities from exercising their rights pursuant to and consistent with the terms of the Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan.**

(b)    *Injunction Against Interference with Plan.*  **Upon entry of the Confirmation Order, all Holders of Claims and their respective current and former employees, agents, officers, trustees, principals, and affiliates shall be enjoined from taking any action to interfere with the implementation or consummation of the Plan.  Each Holder of an Allowed Claim, by accepting distributions pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Section.**

14.7    <u>Discharge of Liabilities</u>.    Except as otherwise provided in the Plan, upon the occurrence of the Effective Date, the Debtor shall be discharged from all Claims and Causes of Action to the fullest extent permitted by Section 1141 of the Bankruptcy Code, and all holders of Claims shall be precluded from asserting against the Reorganized Debtor, the Debtor, the Estate, the Assets, or any property dealt with under the Plan, any further or other Cause of Action based upon any act or omission, transaction, event, thing, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date.

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, THE REORGANIZED DEBTOR SHALL NOT HAVE, AND SHALL NOT BE CONSTRUED TO HAVE OR MAINTAIN ANY LIABILITY, CLAIM, OR OBLIGATION THAT IS BASED IN WHOLE OR IN PART ON ANY ACT, OMISSION, TRANSACTION, EVENT, OTHER OCCURRENCE, OR THING OCCURRING OR IN EXISTENCE ON OR PRIOR TO THE EFFECTIVE DATE OF THE PLAN (INCLUDING, WITHOUT LIMITATION, ANY LIABILITY OR CLAIMS ARISING UNDER APPLICABLE NON-BANKRUPTCY LAW AS A SUCCESSOR TO THE DEBTOR) AND NO SUCH LIABILITIES, CLAIMS, OR OBLIGATIONS FOR ANY ACTS SHALL ATTACH TO THE REORGANIZED DEBTOR.

14.8    <u>Discharge of the Debtor.</u>    Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, without further notice or order, all Claims of any nature whatsoever shall be automatically discharged forever. Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, the Debtor, its Estate, and all successors thereto shall be deemed fully discharged and released from any and all Claims, including, without limitation, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a proof of Claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code, (b) a Claim based upon such debt is allowed under Section 502 of the Bankruptcy Code or (c) the holder of a Claim based upon such debt has accepted the Plan. The Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor, its Estate and all successors thereto. As provided in Section 524 of the Bankruptcy Code, such discharge shall void any judgment against the Debtor, its Estate, or any successor thereto at any time obtained to the extent it relates to a Claim discharged, and operates as an injunction. against the prosecution of any action against the Reorganized Debtor or property of the Debtor or its Estate to the extent it relates to a discharged Claim.

**Notwithstanding anything to the contrary, nothing in the Debtor's Chapter 11 Case, Confirmation Order, Plan, Disclosure Statement, the Bankruptcy Code (and Section 1141 thereof), or any other document filed by the Debtor in the Chapter 11 Case or in the KPC Chapter 11 Cases shall in any way be construed to discharge, release, limit, or relieve the Debtor, the Reorganized Debtor, or any other party, in any capacity, from any fiduciary liability or fiduciary responsibility with respect to the Pension Plan.**

14.9    <u>Notices</u>.    Any notices, requests and demands required or permitted to be provided under the Plan, in order to be effective, shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

KidsPeace National Centers of Georgia, Inc.
Attn: Andrew Burke, Esq.
4085 Independence Drive
Schnecksville, PA 18078
(800) 257-3223 (phone)
(610) 769-7972 (facsimile)

and

Norris McLaughlin & Marcus, PA
Attn: Morris Bauer, Esq.
721 Route 202-206
P.O. Box 5933
Bridgewater, NJ 08807-5933
(908) 252-4345 (phone)
(908) 722-0755 (facsimile)

14.10   Headings.   The headings used in the Plan are inserted for convenience only, and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

14.11   Governing Law.   Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the Commonwealth of Pennsylvania, without giving effect to the conflicts of laws principles thereof, shall govern the construction of the Plan and any agreements, documents and instruments executed in connection with the Plan, except as otherwise expressly provided in such instruments, agreements or documents.

14.12   Notice of Entry of Confirmation Order and Relevant Dates.   Promptly upon entry of the Confirmation Order, the Debtor shall serve on all known parties in interest and holders of Claims, notice of the entry of the Confirmation Order and all relevant deadlines and dates under the Plan.

14.13   Interest.   Interest accrued after the Petition Date will accrue and be paid on Claims only to the extent specifically provided for in the Plan, the Confirmation Order or as otherwise required by the Bankruptcy Court or by applicable law.

14.14   Modification of the Plan.   Any modification of the Plan shall be subject to the requirements of the Bankruptcy Code, including Section 1127 thereof, and the Bankruptcy Rules.

14.15   Revocation of Plan.   The Debtor reserves the right to revoke and withdraw the Plan or to adjourn the Confirmation Hearing prior to the occurrence of the Effective Date. If the Debtor revokes or withdraws the Plan or if the Effective Date does not occur, the Plan and all settlements and compromises set forth in the Plan and not otherwise approved by a separate Final Order shall be deemed null and void and nothing contained herein and no acts taken in preparation for consummation of the Plan shall be deemed to constitute a waiver or release of any Claims against the Debtor or to prejudice in any manner the rights of the Debtor or any other

Person in any other further proceedings involving such Debtor. With respect to which the Confirmation Hearing has been adjourned, the Debtor reserves the right to amend, modify, revoke, or withdraw the Plan and/or to submit any new plan of reorganization at such times and in such manner as it considers appropriate, subject to the provisions of the Bankruptcy Code.

14.16   <u>Setoff Rights.</u>   In the event that the Debtor has a Claim of any nature whatsoever against the holder of a Claim against such Debtor, then such Debtor may, but is not required to, set off against the Claim (and any payments or other Plan Distributions to be made in respect of such Claim hereunder) the Debtor's Claim against such holder, subject to Section 553 of the Bankruptcy Code. Neither the failure to set off nor the allowance of any Claim under the Plan shall constitute a waiver or release of any Claims that the Debtor may have against the holder of any Claim; provided, however, that nothing contained herein shall permit the Debtor or the Reorganized Debtor to set off against any Claim based on any Avoidance Actions that have been waived and released pursuant to Section 7.12 of the Plan.

14.17   <u>Compliance with Tax Requirements.</u>   In connection with the Plan, the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by federal, state, local, and foreign taxing authorities and all Plan Distributions hereunder shall be subject to such withholding and reporting requirements. Notwithstanding the foregoing, each holder of an Allowed Claim that is to receive a Plan Distribution shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any government unit upon it, including income, withholding and other tax obligations, on account of such Plan Distribution, and no holder of an Allowed Claim shall have responsibility for the satisfaction and payment of any tax obligations imposed by any government unit upon any other holder of an Allowed Claim. The Reorganized Debtor has the right, but not the obligation, to not make a Plan Distribution until such holder has made arrangements satisfactory to the Reorganized Debtor for payment of any such tax obligations.

14.18   <u>Rates.</u>   The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date.

14.19   <u>Binding Effect.</u>   The Plan shall be binding upon the Reorganized Debtor, the holders of all Claims, all parties in interest and all Persons and Entities, and their respective successors and assigns. To the extent any provision of the Disclosure Statement or any other solicitation document may be inconsistent with the terms of the Plan, the terms of the Plan shall be binding and conclusive.

14.20   <u>Severability.</u>   In the event the Bankruptcy Court determines that any provision of the Plan is unenforceable either on its face or as applied to any Claim or transaction, the Debtor may modify the Plan in accordance with Section 14.14 so that such provision shall not be applicable to the holder of any such Claim or transaction. Such a determination of unenforceability shall not (a) limit or affect the enforceability and operative effect of any other provision of the Plan or (b) require the resolicitation of any acceptance or rejection of the Plan.

14.21  <u>Successors and Assigns.</u>   The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, trustee or assign of such Person.

14.22  <u>Corrective Action.</u>  The Debtor and/or the Reorganized Debtor shall be authorized to take such actions as necessary and appropriate to carry out the plan, including the correction of mistakes or other inadvertent action. In making distributions or transfers under the Plan, the Debtor and/or Reorganized Debtor may seek return of transfers to the extent of any errors, notwithstanding that the transfer is otherwise irrevocable under the plan.

Dated: December 15, 2014                    Respectfully submitted,

                                            /s/ William R. Isemann, President and
                                            Chief Executive Officer

                                            KidsPeace National Centers of Georgia, Inc.